DISTRICT OF NEW MEXICO

JACOB RODRIGUEZ,

    Plaintiff,

v.                                                     No. 2:17-cv-00576-JCH-JFR

PEAK PRESSURE CONTROL, L.L.C.,
and NINE ENERGY SERVICES, L.L.C.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jacob Rodriguez filed a "Partial Motion for Summary Judgment" (ECF No. 48), on the inapplicability of the administrative and executive exemptions to the New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-22 (MWA). Defendants Peak Pressure Control, L.L.C. and Nine Energy Services, L.L.C, filed a "Response in Opposition to Plaintiff's Partial Motion for Summary Judgment," (ECF No. 56), to which Mr. Rodriguez filed a "Reply in Support of Motion for Partial Summary Judgment" (ECF No. 60). After carefully considering the motion, briefs, evidence, and relevant law, the Court concludes that the motion should be granted in part and denied in part.

**I.    BACKGROUND**

The facts that are material to the question of whether Mr. Rodriguez was misclassified as exempt are largely undisputed. The disputes between the parties center mainly on questions of law and the relevance of various facts. Any disputed facts will be viewed in the light most favorable to Defendants as the non-moving parties. *See Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015). In addition to presenting facts from the summary judgment record, the Court also presents some facts taken from the pleadings, as well as exhibits from the evidentiary record on Mr.

Rodriguez's motion for class certification. *See* Fed. R. Civ. P. 56(c) (stating that while "[t]he court need consider only the cited materials, … it may consider other materials in the record.").

Defendants are Texas-based companies that provide pressure control and other services to customers' well-sites in New Mexico and other states. Mr. Rodriguez worked for Defendants as a pressure control operator (PCO) from September 2014 to January 2015. Pl.'s First Am. Class Action Compl., ¶¶ 2, 4, ECF No. 21. Mr. Rodriguez is a New Mexico resident. *Id*. ¶ 4. Defendants maintained no offices in New Mexico from which they operated pressure control operations. Decl. of Bruce Morgan, ¶ 3, ECF No. 57-1. Rather, PCOs like Mr. Rodriguez worked out of Defendants' shop in Midland, Texas. *Id*. ¶ 3.

Mr. Rodriguez alleges that Defendants "misclassified" him and other PCOs as exempt administrators or executives and paid them on a salary or salary-plus-bonus basis with no overtime pay. ECF No. 21 at ¶ 34. Mr. Rodriguez contends that Defendants regularly scheduled Mr. Rodriguez and others to work 12-hour days and work a minimum of 84-hours per week. *Id*. at ¶¶ 21, 32. Defendants supposedly "failed to pay [Mr. Rodriguez] any overtime premium for all hours worked in excess of 40 hours per workweek during the time period Plaintiff received compensation on a salary or salary plus non-discretionary bonus basis." *Id*. at ¶ 23.

Defendants admitted in their answer that Mr. Rodriguez and others were classified as exempt from the overtime wage protections of the NMWA. Defs.' Answer, ¶¶ 43-44, ECF No. 22. According to Defendants, however, Mr. Rodriguez and putative class members were employed in a bona fide executive or administrative capacity and were forepersons, superintendents and/or supervisors. *Id*. at 14. Additional facts and arguments will be provided as needed in the sections that follow.

**II.     LEGAL STANDARD**

2

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. At the summary judgment stage a court must "view facts in the light most favorable to the non-moving party and draw all reasonable inferences in [his] favor." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.*

When "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Cassara v. DAC Serv., Inc.*, 276 F.3d 1210, 1212 (10th Cir. 2002). "After the moving party has identified a lack of a genuine issue of material fact, the nonmoving party has the burden to cite to specific facts showing that there is a genuine issue for trial." *Ezell v. BNSF Ry. Co.*, 949 F.3d 1274, 1278 (10th Cir. 2020) (internal quotation marks and citations omitted). "The nonmoving party must be specific to satisfy its burden, either by 'citing to particular parts of materials in the record' or by showing that the moving party has relied on insufficient or inadmissible evidence." *Id*. (citing Fed. R. Civ. P. 56(c)(1)(A)–(B)).

### III.  ANALYSIS

#### a.  Application of the MWA to Out-of-State Employers

Defendants claim that the MWA does not apply extraterritorially to out-of-state employers. Mr. Rodriguez argues that he worked interstate between Texas and New Mexico, and that New Mexico overtime law governs work done in excess of 40 hours per work week in New Mexico. The parties have not cited, and the Court has not found, any binding authorities that squarely

address the question of whether the MWA applies to a resident employee for work done in-state for an out-of-state employer. However, as explained below, a statutory interpretation of New Mexico's pertinent wage provisions shows that they apply to employment done in New Mexico, without reference to an employer's or employee's place of residence.

The MWA declares in its preambular section that its purpose is to, among other things, "establish minimum wage and overtime compensation standards for *all* workers at levels consistent with their health, efficiency and general well-being." N.M. Stat. Ann. § 50-4-19 (italics added). Without making any reference to an employer's or employee's residence, New Mexico's minimum wage provision provides that, "[a]n employee shall not be required to work more than forty hours in any week of seven days, unless the employee is paid one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours." N.M. Stat. Ann. § 50-4-22(E). New Mexico labor law – again, without making any reference to an employer's or employee's residence – defines "employ," "employer," and "employee" as follows:

> A. "employ" includes suffer or permit to work;
> B. "employer" includes any individual, partnership, association, corporation, business trust, legal representative or organized group of persons employing one or more employees at any one time, acting directly or indirectly in the interest of an employer in relation to an employee … ; and
> C. "employee" includes an individual employed by an employer, but shall not include:
> (1) an individual employed in a bona fide executive, administrative or professional capacity and forepersons, superintendents and supervisors.

N.M. Stat. Ann. § 50-4-21.

The statute uses no geographic indicators and Defendants have pointed to no portion of the Act that excludes from overtime laws in-state work done by an employee for out-of-state employers. The MWA instead appears to be concerned with whether the employment is done in New Mexico, which has likewise been the focal point for federal courts interpreting state labor

laws. *See O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 579 (S.D.N.Y. 2013) (stating that the "crucial issue" is where an employee is "laboring" as opposed to, for instance, the employee's domicile.). It also bears noting that under federal law, "[s]tates possess broad authority under their police powers to regulate the employment relationship to protect workers within the State. Child labor laws, minimum and other wage laws, laws affecting occupational health and safety, and workmen's compensation laws are only a few examples." *DeCanas v. Bica*, 424 U.S. 351, 356 (1976). Accordingly, persuasive authority on the issue suggests that the MWA applies to an individual's work done in New Mexico, without reference to an employer's residence.

Although binding caselaw in this area appears undeveloped, the non-binding cases that Defendants cite to support their arguments are not on point. Those cases establish only that a state's labor laws do not reach work done by non-residents done mainly or entirely outside of that state, *see e.g.*, *Panos v. Timco Engine Ctr., Inc.*, 197 N.C. App. 510, 515, 677 S.E.2d 868, 873 (2009); *Fontenberry v. MV Transp., Inc.*, 984 F. Supp. 2d 1062, 1066 (E.D. Cal. 2013), unless the non-resident has significant contacts with that state, *see Dow v. Casale*, 83 Mass. App. Ct. 751, 756-58, 989 N.E.2d 909, 913-15 (2013). None of these cases addresses the specific question here: does the MWA cover work done by an employee who works interstate between New Mexico and Texas and is employed by Texas-based employers? Given that Mr. Rodriguez resides in New Mexico and worked partially for Defendants in New Mexico, the Court concludes that he is afforded protection by the MWA for alleged overtime work done in New Mexico.

### b. Administrative Exemption

Mr. Rodriguez seeks summary judgment on the inapplicability of the administrative exemption, which Defendants raised as an affirmative defense in their answer. As noted earlier,

the MWA exempts individuals "employed in a bona fide executive, administrative or professional capacity and forepersons, superintendents and supervisors" because such individuals do not fall within the MWA's definition of "employee." N.M. Stat. Ann. § 50-4-21(C); *Williams v. Mann*, 2017-NMCA-012, ¶ 28, 388 P.3d 295, 305. Federal regulations classify employees as "administrative" if (1) they are "[c]ompensated on a salary basis," (2) their "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and (3) their "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). Mr. Rodriguez only seeks summary judgment on the second element. Accordingly, the Court limits its analysis to that component.

The second element, whether the employee's primary duty is directly related to management, requires consideration of whether the employee "perform[s] work directly related to assisting with the running or servicing of the business, as distinguished ... from working on a manufacturing production line or selling a product in a retail or service establishment." *Id*. at § 541.201(a). Determining an employee's "primary duty" under the regulations requires analysis of "all the facts in a particular case," looking to the "principal, main, major or most important duty that the employee performs." *Id*. at § 541.700(a). The pertinent regulations offer a non-exhaustive list of examples of "work directly related to management or general business operations" including,

> work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.

*Id*. at § 541.201(b).

In the introductory section of his motion for partial summary judgment, Mr. Rodriguez describes, with evidentiary support, the physical and manual nature of PCOs' work and how their work is largely performed outdoors. *See generally*, ECF No. 48, 5-7. In their response brief in opposition, Defendants provided no rebuttal evidence or argument that PCOs perform non-manual work. Thus, for purposes of ruling on the motion for summary judgment, it is undisputed that PCOs' job duties are largely manual in nature.

Instead, Defendants contend that PCOs are exempt administrators because their work was directly related to management or general business operations. Specifically, they point out that PCOs manage well-sites, which includes promoting the company to the client and wireline companies, *see* ECF No. 56 at 12-13 (citing Depo. of Eddie Merryman, 44:10; 64:14, 16-18, ECF No. 56-2), prioritizing job site health and safety, *see id*. at 13 (citing Depo. of Noel Horacio Renteria Hernandez, 169:21-23, ECF No. 56-3; Depo. of Manuel Romo, 104:24-25 – 105:1-2, ECF No. 56-4; Depo. of Uriel Sanchez, 183:19-22, ECF No. 56-5; Depo. of Vicente Torres, Jr., 107:25 – 108:1-6, ECF No. 56-6; Depo. of William Scott Carter, 20:2-22, ECF No. 56-7), and taking charge of the entire operation, *see id*. at 14 (citing Romo Depo. at 91:21-24; Renteria Depo. at 206:6-12).

Defendants describe this body of evidence as showing that PCOs' "primary job dut[ies] [were] directly related to Defendants' general business operations" – namely to "manag[e] Defendants' entire well site pressure control operation for Defendants' customers, which involved interacting with the customers and other service providers to complete the well in a safe and efficient manner." ECF No. 56 at 14. They therefore contend that PCOs performed "quality control," "marketing," and "safety and health" work within the meaning of 29 C.F.R. § 541.201(b).

7

Once again, to prevail on the "directly related" prong of the administrative exemption, Defendants must show that the employee "perform[s] work directly related to assisting with the running or servicing of the business, as distinguished ... from working on a manufacturing production line or selling a product in a retail or service establishment." *Id.* at § 541.201(a). The relevant distinction "is between those employees whose primary duty is administering the business affairs of the enterprise [and] those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market." *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 336 (5th Cir. 2017) (quoting *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (5th Cir. 1990)).

Under the standards recounted above, a reasonable trier of fact could not conclude that PCOs were responsible for running the business affairs of Defendants' business such that they are exempt administrators. A review of Mr. Rodriguez's evidence shows that PCOs would follow orders to go to a given job site. *See* Depo. of Jeff Tranum, 146:14-18, ECF No. 48-3. Once at the job, PCOs would "spot" their job equipment, which involved unstrapping and unchaining the equipment on the trailer. *Id.* at 245:18-22. Defendants' witness testified that PCOs' main job duty was to maintain wellbore pressure. Merryman Depo. at 68:5-10, ECF No. 48-4. This process involved working hand pumps and nobs. *Id.* at 71:3 – 73:1-7. This evidence shows that PCOs "produce" the services that Defendants offer. *See Pye v. Oil States Energy Servs., LLC*, 233 F. Supp. 3d 541, 560 (W.D. Tex. 2017) (granting summary judgment to oilfield worker on employer's administrative exemption where worker's evidence showed that he "produce[d] the very services Defendant offer[ed]—the delivery and operation of oilfield equipment at Defendant's customers' well-sites.") (internal ellipses removed).

8

The Fifth Circuit's decision in *Dewan* counters Defendants' claim that the foregoing activities constituted "quality control." In *Dewan* an oilfield service company employed "mud engineers," whose job it was to manage the company's drilling-fluid system. 858 F.3d at 332. To ensure the drilling mud performed adequately, mud engineers did things like test the mud's pH, rheology, weight, and viscosity. *Id*. at 333. The Fifth Circuit reversed the district court's summary judgment holding that these activities constituted "quality control." The court noted that "quality control" was "in a list that also contains 'areas such as tax; finance; accounting; budgeting; auditing; insurance; ... purchasing; procurement;' and others" under 29 C.F.R. § 541.201(b) and that these list items were "functional areas … *directly related to management*." *Dewan*, 858 F.3d at 337 (citation omitted) (emphases added). Against this backdrop, the Fifth Circuit held that "[t]he regulations reference to 'quality control,' … seems to mean the quality of the mud being provided to M-I's customers and not with monitoring and adding materials to the mud as it is being used in drilling wells to ensure that its properties stay within the specifications set forth in the mud plan developed by project engineers." *Id*. Here, for purposes of analyzing the administrative exemption, the work performed by the mud engineers in *Dewan* is virtually indistinguishable from the work performed by PCOs. Under *Dewan*, a reasonable trier of fact could not conclude from Defendants' evidence that PCOs provided "quality control."

Moreover, a reasonable trier of fact examining Defendants' evidence could not conclude that PCOs were engaged in "safety and health" measures. First, the deposed PCOs merely answered affirmatively that jobsite safety is a job duty. *See e.g.* Sanchez Depo. at 183:19-22, ECF No. 56-5 (Q: "Did you consider … one of your job duties … to be – to ensure the safety of you and the Peak equipment?" A: "Sure."). Such responses do not reflect that PCOs were running Defendants' business affairs concerning safety and health standards. *See Talbott v. Lakeview Ctr.,*

*Inc.*, No. 3:06CV378/MCR/MD, 2008 WL 4525012, at *5 (N.D. Fla. Sept. 30, 2008) (stating that the regulation's "reference to 'safety and health' means functions that constitute a general oversight of the safety and health of the employer's other employees, such as through compliance with OSHA regulations."); *see also Dewan*, 858 F.3d at 338 (mud engineers did not oversee other employees' compliance with health and safety standards within the meaning of § 541.201(b)). Nor did Defendants provide evidence that PCOs engaged in "marketing," which involves "an employee encouraging an increase in sales generally among all customers." *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 107 (2d Cir. 2010). Accordingly, there is no genuine issue of material fact that Mr. Rodriguez's work was not directly related to Defendants' general business operations for purposes of the administrative exemption.

Defendants cite *Guyton v. Legacy Pressure Control*, No. 5:15-CV-1075-RCL, 2017 WL 244868 (W.D. Tex. Jan. 18, 2017) for the proposition that courts deny oilfield workers' summary judgment motions when there are "inherent factual disputes," concerning exemption classifications. ECF No. 56 at 22. However, the inherent factual dispute in *Guyton* was whether the oilfield workers even performed manual labor at all where the employer contended that they spent only 10% of their job on manual work. 2017 WL 244868 at *3-5. Here, Defendants mounted no such challenge to the manual nature of Mr. Rodriguez's job duties, making *Guyton* distinguishable.

### c. Executive Exemption

In his motion, Mr. Rodriguez cites the New Mexico Administrative Code's previous definition of an "executive" that was in effect at the time of the alleged injury, but was repealed at the time Mr. Rodriguez filed his motion. *See* N.M. Admin. Code 11.1.4.7(C) (repealed 2017)

(previously defining an "executive" as one who: (1) "perform[s] non manual work related to management of business" as his "primary duty"; (2) exercises discretion; (3) regularly assists executive work or performs specialized work or assignments; and (4) performs less than 20 percent nonexempt work.).[1] Mr. Rodriguez only moves for summary judgment on the second element of this test – whether Mr. Rodriguez and PCOs exercised discretion.

Both parties acknowledge that this provision has been repealed. However, Mr. Rodriguez lays out a procedure in his reply brief whereby he asks the Court to apply the old and new versions of N.M. Admin. Code 11.1.4.7, along with the federal regulation defining an executive.[2] The application of one of these three legal standards would vary depending on the exemption at issue and whether the injury occurred before or after November 14, 2017.

However, Mr. Rodriguez identified no authority explaining which of these three tests governs. Without knowing the governing definition of an "executive," the Court is unable to meaningfully analyze which facts are material for summary judgment purposes. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (explaining that the underlying substantive law dictates which facts are material at summary judgment.) Moreover, Mr. Rodriguez identified these three tests in his reply brief, so technically Defendants have not had an opportunity to respond with facts, law and argument concerning those tests. The Court therefore denies Mr. Rodriguez's motion for summary judgment on the applicability of the executive exemption.

## IV.   CONCLUSION

---

[1] The current version of N.M. Admin. Code 11.1.4 does not define an exempt "executive."

[2] Federal regulations define an "executive" as any person who is (1) "[c]ompensated on a salary or fee basis," (2) their "primary duty is management of the enterprise," (3) they "customarily and regularly direct[ ] the work of two or more other employees," and (4) they "ha[ve] the authority to hire or fire other employees or" if their "suggestions and recommendations" on personnel decisions "are given particular weight." 29 C.F.R. § 541.100(a)

**IT IS THEREFORE ORDERED that** Plaintiff Jacob Rodriguez's "Partial Motion for Summary Judgment" **(ECF No. 48)** is **GRANTED** as to the inapplicability of the administrative exemption to the MWA, but **DENIED** in all other respects.

**IT IS SO ORDERED**.

_____
Judith C. Herrera
Senior United States District Judge